(78 South. 435)

No. 21378.

HENDERSON, Sheriff, v. SOUTHWESTERN TRACTION & POWER CO.

(April 1, 1918.)

*(Syllabus by the Court.)*

1. STREET RAILROADS ☞69—STATE LICENSE TAX—STATUTE.

Under Act No. 171 of 1898, § 10, pp. 406, 407, as amended by Act No. 103, of 1900, p. 163, a corporation engaged in operating an electric railroad in any city or town of this state having less than 50,000 inhabitants is liable for an annual state license, based upon its gross annual receipts as therein provided, and is not relieved of that obligation by reason of its doing an interurban business, whether the same be greater or less than the business done in the cities or towns between and in which it operates.

2. STREET RAILROADS ☞69—STATE LICENSE TAX—BURDEN OF PROOF—INTEREST AND ATTORNEY'S FEES.

The law (Act No. 171 of 1898, pp. 417, 418, § 19) makes provision whereby the tax collector may obtain the necessary information and enforce the payment of the license tax thereby imposed, and the burden rests upon him to establish the basis for the judgment which he seeks in such a case. Where, however, it is shown that any business is conducted in a particular city or town, he is entitled to a judgment for $15, as the annual license for operating an electric railroad therein, though the amount of the gross annual receipts from such business is not shown, and the right to collect the license carries with it the right to collect interest and attorney's fees.

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Proceeding by George Henderson, Sheriff and ex officio Tax Collector, against the Southwestern Traction & Power Company. Judgment for defendant, and plaintiff appeals. Judgment annulled, and judgment rendered for plaintiff.

L. T. Dulany, of New Iberia, for appellant. Foster, Milling, Saal & Milling, of Franklin, for appellee.

MONROE, C. J. This is a proceeding by the ex officio state tax collector of the parish of Iberia to compel defendant to pay $200, with certain penalties, by way of licenses, of $50 each, for the years 1914 and 1915, for operating an electric railroad for the transportation of passengers within the limits of the cities of New Iberia and Jeanerette, respectively, located in that parish.

Defendant denies liability on the ground that it operates an interurban road between the cities mentioned, and that the business done within their limits is merely incidental to its interurban business. It alleges that, should the court hold otherwise, the license should be based upon the aggregate gross receipts of the two cities, and that but one license should be exacted, and that, should the court hold that a license may be exacted for each city, it should not exceed $15.

Act 171 of 1898, § 10, as amended and re-enacted by Act 103 of 1900, p. 163, reads:

"Provided, that, for the business of carrying on, operating, or running any horse, or steam, or electric railroad, or both, for the transportation of passengers within the limits of any city or town in this state the annual license shall be three eighths of one per cent. of the annual gross receipts.

"Provided, that, in cities where the population is less than 50,000, there shall be three grades based on actual gross receipts, as follows, viz.:

"First Class—When the annual gross receipts are $25,000.00, or in excess of that amount, the license shall be $100.00.

"Second Class—When the annual gross receipts are less than $25,000.00, and more than $3,000.00, the license shall be $50.00.

"Third Class—When the gross annual receipts are $3,000.00, or less, the license shall be $15.00."

The two cities have each less than 50,000 inhabitants; hence, if defendant is liable for the licenses, it falls under one or the other of the three above-stated classifications.

[1] It appears from the evidence that it operates an electric road extending from the north side of and through New Iberia to the south side of and through Jeanerette, using the main street of each of the cities; that it has a franchise, of which it has not availed itself, to make use of other streets in New Iberia and, probably, a similar franchise in Jeanerette; that to the extent of its present trackage it does a local business in each city; that is to say, its cars stop at each street corner to take on and let off passengers, and may stop between the corners; that a uniform fare of five cents is charged for any distance within the limits of the cities; that though usually the cars make their trips from the terminus of the road in one city to the terminus in the other, an exception is made during the baseball season, in New Iberia, upon which occasions the cars run to the park and back, through New Iberia, until the crowds are carried out or brought home, without going, or in addition to going, to Jeanerette. It may be that the General Assembly was not thinking of defendant or its road when the act of 1871 was passed; in fact, it is quite likely that the road was not then built; and it may be that defendant was not thinking of the act of 1871 when it built its road in such a way, as we imagine, as to get a considerable share of local business both in New Iberia and Jeanerette. The fact remains that it is operating an electric railway within the limits of each of those cities and within the terms of the statute, and that it owes a license for each city.

The evidence fails to show the amount of its gross receipts, and defendant seems to have been so taken by surprise that it is said that it may be compelled to adopt a different method of bookkeeping in order to find out what its receipts in the two cities amount to. The learned counsel for plaintiff argues that, inasmuch as the information is, or should be, in defendant's possession, the burden of producing it rests upon defendant, and deduces therefrom that, by reason of its failure in the production, the court is to assume that the gross annual receipts in each city are the same and fall within one classification, out of a possible three, rather than either of the others. But we are not referred to the authority for that saying. The petition alleges that defendant owes $50 a year for each city, for two years' licenses, and, as showing why it is so indebted, counsel point to the provisions of the statute which impose the tax upon companies doing business in cities of less than 50,000 inhabitants, and fix the amount with reference to their gross annual receipts as follows, to wit: $100 where such receipts are $25,000 or more; $50 where they are less than $25,000 and more than $3,000; and $15 where they are less than $3,000; and, having followed that by the introduction of testimony showing that the cities in question contain, each, less than 50,000 inhabitants, and that defendant is doing business in each city and deriving some revenue therefrom, it appears to us that he should go further, in order to recover an annual license of as much as $50, and show the amount of the revenue derived from the business in each city. It is no doubt true that, where a defendant alone possesses the information necessary to the making out of a plaintiff's case, the plaintiff may, at some risk, extract it from him, but he is not usually expected to furnish it of his own accord. For the purposes of cases of this kind the law seems to contemplate that the tax debtor shall make a sworn return, but our inspection of act 171 of 1898 and its amendments has failed to disclose a specific provision to that effect. Section 19 of that act (page 417) declares:

"That the business, * * * for the purpose of calculating licenses, shall be ascertained by the tax collector in the sworn statement of the person * * * interest, * * * his * * * agent or officer, made before the tax collector or his deputy; provided, that, if the tax collector is not satisfied with the said sworn statement, he shall traverse the same by a rule. * * * On the trial of said rule, the books and written entries and memoranda of said person * * * shall be brought into court, and subjected to the inspection and examination of the court, the officer who took the rule, and such experts as he may employ or the court may appoint," etc.

Act 170 of 1898 (providing for property taxation) § 14, pp. 353, 354, provides:

"That it shall be the duty of each taxpayer, parish of Orleans excepted, to fill out a list of his property, * * * and he shall make oath thereto * * * and return the same to the assessor * * * and any refusal, neglect or failure * * * to comply with this provision * * * shall act as estopping the taxpayer from contesting the correctness of the assessment list filed by the assessor."

[2] But, if we should assume that the "sworn statement" referred to in Act 171 is the one provided for in Act 170, it remains that Act 171 provides no penalty for or failure to return such statement, other than as may be found in section 20, as above quoted. It is shown here that New Iberia has a population of about 7,500, and Jeanerette a population of about 3,000. It is hardly to be supposed therefore that defendant's gross annual receipts are the same in each city, and as it is not shown what they are in either (plaintiff not having called for the "books," etc.), there is no basis upon which to rest a judgment against either for $50 a year, any more than for $100, but it is shown that defendants get some receipts from its business in each, and as it is liable for a license of $15 a year in each, upon the basis of gross annual receipts amounting to "$3,000.00, or less," it is evident that plaintiff is entitled

to recover upon that basis, which, under sections 26 and 28 of the act (page 420), also entitles him to recover interest at the rate of 2 per cent. per month from March 1st of the year in which the license fell due, and 10 per cent. as attorney's fees, upon the aggregate amount of the license and penalties collected and turned over to the collector.

It is therefore ordered and decreed that the judgment appealed from be annulled, and that there now be judgment in favor of the plaintiff herein and against the defendant in the sum of $60, with interest upon $30 thereof, at the rate of 2 per cent. per month from March 1, 1914, and like interest upon a like sum from March 1, 1915, until paid, and 10 per cent. upon the aggregate amount of principal, interest, and costs, as attorney's fees. It is further decreed that defendant pay all costs.